No. 01-169

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 186

ROBERT W. OLSON,

        Plaintiff and Appellant.

    v.

JAMES R. JUDE, SALLYE JUDE,
BIG HORN PROPERTIES, L.P., and
CHRISTOPHER JUDE,

        Defendants and Respondents.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                      In and for the County of Gallatin, Cause No. DV-95-336
                      The Honorable Mike Salvagni, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Lisa A. Banick, Alfred F. Avignone, Garrity, Avignone, Banick & Whetstone,
                Bozeman, Montana

        For Respondents:

                Christopher Williams, Bozeman, Montana; Peter M. Kirwan, Kirwan &
                Barrett, Bozeman, Montana


                              Submitted on Briefs:  August 30, 2001

                                      Decided:  July 15, 2003

Filed:

                           _____
                                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Robert W. Olson appeals a judgment of the District Court for the Eighteenth Judicial District, Gallatin County, quieting title of the property in question to James R. Jude, Sallye Jude, Big Horn Properties, L.P., and Christopher Jude (collectively, "the Judes"). We affirm.

¶2     While Olson raised a number of issues on appeal, we have consolidated them into the following three issues:

¶3     1. Whether the District Court correctly determined that the Big Horn Tract's northern boundary is along the east-west quarter section line of Section 32.

¶4     2. Whether the District Court correctly awarded the relief sought by the Judes.

¶5     3. Whether the District Court correctly denied the relief sought by Olson.

¶6     Because we affirm on Issues 1 and 2, we do not address Issue 3.

**Factual and Procedural Background**

¶7     On October 27, 1995, Boyne USA, Inc., filed a complaint against James and Sallye Jude seeking to quiet title to the property known as Tract 1, Certificate of Survey 1898 (COS 1898), located in the NE ¼ of the SE ¼ of Section 32, Township 6 South, Range 4 East, Gallatin County, Montana. Tract 1, COS 1898 is a 2.997 acre parcel located on Highway 191 just north of the intersection of Highway 191 and the access road to Big Sky Resort. (*See* Diagram.) Boyne also sought to quiet title to improvements on Tract 1, COS 1898 made by the Judes as well as damages for the Judes' allegedly wrongful occupation of Tract 1, COS 1898.

¶8     The Judes own property referred to as the Big Horn Tract. Resolution of this dispute

2

depends on whether the northern boundary line of the Big Horn Tract is located where the surveyor of that subdivision set the monuments marking that line or whether the northern boundary line of the Big Horn Tract is located at the east-west quarter section line of Section 32. Olson asserted at trial that the monuments placed by surveyor Earl Best in 1957 control the northern boundary of the Big Horn Tract and that Olson owns the land north of those monuments (Tract 1, COS 1898). The Judes asserted at trial that the east-west quarter section line of Section 32 controls the northern boundary of the Big Horn Tract and that the Judes own the land up to the east-west quarter section line, which would include Tract 1, COS 1898. The United States Government owns the land north of the east-west quarter section line of Section 32.

*Chain of Title*

¶9     Thomas Cahill, title examiner and manager of American Land Title Company in Bozeman examined the title to Tract 1, COS 1898 and the Big Horn Tract in 1995 and again prior to trial. Cahill provided his testimony by affidavit in which he identified the following chain of title for Tract 1, COS 1898 and the Big Horn Tract.

¶10    On June 3, 1916, the United States Government conveyed the NE ¼ of the SE ¼ of Section 32, Township 6 South, Range 4 East, Gallatin County, Montana, to Andrew Lewinski. During the time that Lewinski owned this parcel of land, a county road was created that ran through the property. This road was called the West Gallatin Road.

¶11    In 1917, Lewinski conveyed the property to Charles Anceny and, on June 22, 1992, Anceny conveyed to Gallatin County approximately 3.43 acres of the property for a highway

3

right of way. On December 18, 1922, Anceny conveyed that portion of the property lying west of West Gallatin Road to Gertrude Collett. That parcel was described as all that part of the NE¼ of the SE¼ of Sec. 32, T6S, R4E lying west of the West Gallatin Road, "the land hereby conveyed containing 26.5 acres, more or less." Between 1922 and 1953, the property changed hands several times. During that time, the deeds transferring this parcel contained a description similar to that in the Anceny-to-Collett deed.

¶12   On July 12, 1953, Adelaid McMullen, the owner of the property at that time, conveyed to the State of Montana an additional .71 acres for a highway right of way. This conveyance changed the size and location of the West Gallatin Road to the existing Highway 191 right of way. On November 6, 1953, McMullen conveyed to Earl Dawes all that part of the NE ¼ of the SE ¼ of Section 32, Township 6 South, Range 4 East, lying west of the West Gallatin Road and west of Highway 191.

¶13   On December 19, 1953, Dawes conveyed to L.G. and Ruth Zollinger all that part of the NE ¼ of the SE ¼ of Section 32, Township 6 South, Range 4 East, lying west of the West Gallatin Road and west of Highway 191, reserving a parcel 300 feet by 260 feet in size. The reserved parcel was later known as "the Dawes-Fishbaugh parcel." The Zollingers later conveyed an additional .05 acres to the State of Montana for a highway right of way.

¶14   In 1957, the Zollingers decided to subdivide their property. They hired Earl Best to survey and prepare a subdivision plat for a portion of the property. This subdivision became known as the Big Horn Tract and was recorded on June 7, 1957, in Plat Book E, page 52 (hereafter referred to as "Plat E-52"), in the offices of the Gallatin County Clerk and

4

Recorder.

¶15     The Zollingers subsequently conveyed the property, other than the Big Horn Tract and the Dawes-Fishbaugh parcel to Swenson Furniture & Distributing Co., who later conveyed the property to O.K. Swenson.  On February 26, 1970, Swenson conveyed the property to Sam Smeding who, on June 8, 1976, conveyed the property to Big Sky of Montana, Inc. (Big Sky).  Thereafter, Big Sky conveyed to the State of Montana another 1.9 acres for a highway right of way.

¶16     The Judes began purchasing the Big Horn Tract lots in 1985 for investment purposes.  By the time Boyne (who is the successor by merger to Big Sky) filed its lawsuit in 1995, the Judes owned lots F through Q of the Big Horn Tract.  The property description portion of each of the deeds of conveyance for these lots refers to "the official plat thereof on file and of record in the office of the County Clerk and Recorder of Gallatin County, Montana" (Plat E-52).

¶17     On July 7, 1995, almost four months prior to the commencement of this action, Boyne had COS 1898 recorded in the offices of the Gallatin County Clerk and Recorder.  COS 189, shows a tract of land lying north of the Big Horn Tract and south of the east-west quarter section line of Section 32.  This tract is referred to on COS 1898 as Tract 1 and is the property at issue in this action.

¶18     On February 24, 1997, Boyne sold and conveyed Tract 1, COS 1898 to Robert Olson.  As part of the purchase agreement for Tract 1, COS 1898, Boyne transferred and assigned all of its right, title and interest in this lawsuit to Olson.  Thereafter, Olson was joined as a

5

plaintiff in this action.

¶19 On November 21, 1997, the Judes conveyed lots F through P of the Big Horn Tract to Big Horn Properties, L.P., and lot Q of the Big Horn Tract to their son, Christopher Jude. The Judes are the controlling partners of Big Horn Properties. After these conveyances, Big Horn Properties and Christopher Jude were added as defendants.

¶20 Leland Dawes and the Trustees of the Donaldine Fishbaugh Revocable Trust were the owners of the Dawes-Fishbaugh parcel reserved in 1953. This parcel is located south of Lot G of the Big Horn Tract. On December 3, 1997, Dawes and the Trustees transferred their property and all of their right, title and interest in this lawsuit to Boyne. Thereafter, Boyne, the Judes and Olson entered into a stipulation for dismissal in which the claims by and against Boyne were dismissed with prejudice.

*Land Surveys*

¶21 In 1905, Ralph and Howard Bushnell surveyed Section 32, Township 6 South, Range 4 East, Gallatin County, Montana, under contract to the United States Government. The Bushnells established corners at half-mile intervals for creating sections and quarter sections. They started from the corner of Sections 4, 5, 32 and 33, and proceeded north 0 degrees 4 feet west between Sections 32 and 33. At 40 chains, or halfway between section lines, they placed a 16 inch by 9 inch by 5 inch granite stone 11 inches into the ground. The inscription "¼" was marked on its west face. The stone monumented the east quarter corner of Section 32 and denotes the eastern terminus of the east-west quarter section line through Section 32. This quarter section corner lies at the center of Highway 191.

6

¶22    In 1953, the Montana State Highway Commission surveyed a portion of Section 32 near what later became the Big Horn Tract. The Commission's survey located the center line for Highway 191. This survey also depicted the east quarter corner of Section 32 close to the center line of Highway 191.

¶23    In 1957, the Zollingers hired Earl Best to survey and prepare the subdivision plat for the Big Horn Tract. In his "Certificate of Surveyor" on Plat E-52, Best certified that iron pin monuments were set at all external and lot corners of the Big Horn Tract. The "Certificate of Dedication" on Plat E-52 described the Big Horn Tract's boundaries by reference to the ten corners where Best set monuments and it identified the total acreage of the tract as "14.494 acres, more or less." However, none of the Big Horn Tract's corners are identified as being coincident with any government corner or government monument. Plat E-52 also identifies the acreage for each lot. The Dawes-Fishbaugh parcel is shown on Plat E-52 as Lot D even though it was not part of the Big Horn Tract.

¶24    Testimony at the trial in this matter showed that Best committed several errors while surveying the Big Horn Tract including: (1) failing to use proper methodology to survey the property; (2) incorrectly locating the original government corner for the starting point of the Big Horn Tract survey as it is identified on the plat; (3) failing to retrace and "follow the footsteps" of the previous government survey that created Section 32; (4) failing to correctly locate the east-west quarter section line of Section 32; (5) failing to locate and properly identify the east quarter corner of Section 32; (6) incorrectly locating and identifying the Dawes-Fishbaugh parcel that is identified as Lot D of the Big Horn Tract; and (7) incorrectly

7

identifying the total acreage for Lot G of the Big Horn Tract.

¶25   Best's failure to correctly retrace the east-west quarter section line created a discrepancy between the description contained in the Zollinger's Certificate of Dedication on Plat E-52 and the location of the monuments Best set pursuant to the survey. While the Certificate of Dedication and Plat E-52 itself identify the northern boundary of the Big Horn Tract as being along the east-west quarter section line, Best placed his monuments for the northern boundary 108 feet south of the east-west quarter section line. In the early 1970s, the State revoked Best's surveying license for errors similar to the ones he committed with the Big Horn Tract survey.

¶26   In 1959, the Bureau of Land Management resurveyed Section 32 and set new corner monuments. And, in 1970, Louis Tout of Tout & Company conducted a survey of the subject quarter of Section 32 for Big Sky. Tout identified a boundary problem along the east-west quarter section line for Section 32. In a memo dated August 27, 1970, Tout noted the discrepancy between the original 1905 United States Government survey that monumented the east quarter corner of Section 32 and where Best referenced the quarter corner location.

¶27   In November 1994, Ron Allen of Allen & Associates surveyed the location of monuments in the Big Horn Tract for Boyne. Allen relied on Best's erroneously placed monuments to locate the northern boundary of the Big Horn Tract. Allen identified the strip of land located between the northernmost monuments placed by Best and the east-west quarter section line (an area approximately 108 feet by 1200 feet and equaling almost 3

8

acres) as Tract 1 when he prepared COS 1898. Thereafter, Boyne claimed ownership of Tract 1, COS 1898, contending that it was not part of the Big Horn Tract, therefore, it was never conveyed to the Judes. Allen filed COS 1898 with the Gallatin County Clerk and Recorder's Office on July 7, 1995.

¶28 In the latter part of 1994, the Judes began construction of a cabin on the now disputed parcel identified as Tract 1, COS 1898. After the construction of the cabin had already begun, the Judes learned that Boyne claimed ownership of Tract 1, COS 1898. Nevertheless, the Judes continued with the construction of the cabin. The completed cabin is a two story, two bedroom log structure with an attached garage. The cabin's foundation extends 33.15 feet into Tract 1, COS 1898.

¶29 In September 1994, an architectural firm hired by the Judes retained Mark Chandler with C & H Engineering and Surveying, Inc., to survey topographical features of the south end of the Big Horn Tract for the design of improvements on that portion of the property. In March 1995, Chandler discovered the material discrepancy between Best's placed monuments and the east-west quarter section line of Section 32. After a search, Chandler found two of Best's monuments in the northeast portion of the Big Horn Tract; four of Best's monuments along the common boundary with U.S. Highway 191; and two of Best's monuments on the south boundary of the Big Horn Tract. Based upon the found monuments, Chandler computed likely positions for the remaining monuments of the Big Horn Tract, and, based upon his computations, Chandler also determined that Best placed his monuments short of the east-west quarter section line for Section 32 by almost 112 feet.

¶30 Because of the language contained in the Certificate of Dedication provided on Plat E-52 and because Plat E-52 references the east quarter corner and west quarter corner of Section 32 for the location of the northern boundary line of the Big Horn Tract, Chandler opined that it was the Zollingers' intention that the northern boundary of the Big Horn Tract be located along the east-west quarter section line of Section 32, not at the point where Best set his monuments. Consequently, in August 1995, Chandler prepared a correction plat of the Big Horn Tract for submission to the Gallatin County Planning Office. This plat depicted the northern boundary of the Big Horn Tract along the east-west quarter section line of Section 32. However, because Chandler's plat constituted a material alteration of a previously filed plat (COS 1898), the Gallatin County Planning Office would not accept it. Thereafter, Chandler submitted a Certificate of Survey depicting the northern boundary of the Big Horn Tract along the east-west quarter section line of Section 32. The Gallatin County Planning Office refused to take action on this Certificate of Survey due to the ownership issues concerning the property.

¶31 On October 27, 1995, Boyne filed its complaint against the Judes seeking to quiet title to Tract 1, COS 1898. Boyne also sought to quiet title to the cabin and other improvements made by the Judes on Tract 1, COS 1898, as well as damages for the Judes' allegedly wrongful occupation of Tract 1, COS 1898. In their answer and counterclaim, the Judes alleged that they own Tract 1, COS 1898, that COS 1898 is a cloud on the title of their lots, and that COS 1898 should be canceled. Originally, the Judes asserted that they also owned Tract 1, COS 1898 under the theory of adverse possession. However, they later conceded

10

that because the evidence indicated that they had not paid the property taxes on Tract 1, COS 1898 as they had believed, they could not establish adverse possession.

¶32 Following a three-day bench trial, the District Court issued its Findings of Fact and Conclusions of Law wherein it determined that because original monuments control the location of boundaries, Plat E-52's references to the 1905 United States Government survey control the location of the northern boundary of the Big Horn Tract. Consequently, the court concluded that the northern boundary of the Big Horn Tract is along the east-west quarter section line of Section 32, hence Tract 1, COS 1898 is part of the Big Horn Tract. The court also concluded that the Judes own Tract 1, COS 1898 and that they are entitled to the quiet and peaceful possession of that property and to the improvements located thereon. The Court ordered that COS 1898 be stricken from the records of the Gallatin County Clerk and Recorder's Office and that the Judes prepare and file a new instrument that describes the northern boundary of the Big Horn Tract as being along the east-west quarter section line of Section 32.

¶33 On January 22, 2001, the court entered Judgment in favor of the Judes and awarded the Judes $676.58 in costs. Olson appeals.

## Standard of Review

¶34 We review a district court's findings of fact to determine whether they are clearly erroneous. *State v. Wooster*, 1999 MT 22, ¶ 2, 293 Mont. 195, ¶ 2, 974 P.2d 640, ¶2 (citing *Interstate Prod. Credit Assn. v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the

11

district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a definite and firm conviction that a mistake has been made. *Tester v. Tester*, 2000 MT 130, ¶ 10, 300 Mont. 5, ¶ 10, 3 P.3d 109, ¶ 10 (citing *In re Estate of Hunsaker*, 1998 MT 279, ¶ 26, 291 Mont. 412, ¶ 26, 968 P.2d 281, ¶ 26; *DeSaye*, 250 Mont. at 323, 820 P.2d at 1287). We review a district court's conclusions of law to determine whether that court's interpretation of the law is correct. *Tester*, ¶ 9 (citing *Cenex Pipeline LLC v. Fly Creek Angus, Inc.*, 1998 MT 334, ¶ 22, 292 Mont. 300, ¶ 22, 971 P.2d 781, ¶ 22; *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686).

**Issue 1.**

¶35     *Whether the District Court correctly determined that the Big Horn Tract's northern boundary is along the east-west quarter section line of Section 32.*

¶36     The District Court determined that the documents conveying title to the Big Horn Tract lots are ambiguous because of discrepancies between the description in the Certificate of Dedication on Plat E-52 and the location of Best's monuments. Consequently, after examining the circumstances surrounding the creation of the Big Horn Tract to determine the Zollingers' intent, the court concluded that the northern boundary of the Big Horn Tract is along the east-west quarter section line of Section 32. Hence the court further concluded that Tract 1, COS 1898 is part of the Big Horn Tract and, as such, it belongs to the Judes.

¶37     Olson argues on appeal that the District Court erred because Best's monuments marking the corners and boundary of the Big Horn Tract are the original monuments for the tract and should control the location of the Big Horn Tract's northern boundary line. Thus,

12

Olson maintains that the Big Horn Tract's northern boundary is as depicted on COS 1898, therefore, Olson owns Tract 1, COS 1898.

¶38     The Judes argue on the other hand that while Olson is correct that original monuments control, Best's monuments are not the original monuments. The oldest, original monument referenced on Plat E-52 is the monument for the northeast quarter corner set by the United States Government in 1905. Hence, the Judes assert that it should control the location of the northern boundary of the Big Horn Tract.

¶39     When surveyors use corner sections and lines to base measurements and plot tracts, it is essential that they properly identify and authenticate the original monument. *Helehan v. Ueland* (1986), 223 Mont. 228, 231, 725 P.2d 1192, 1194. "Original corners, as established by the government surveyors, if they can be found, or the places where they were originally established, if they can be definitely determined, are conclusive on all persons owning or holding with reference thereto, without regard to whether they were located correctly or not, and must remain the true corners or monuments by which to determine the boundaries." *Vaught v. McClymond* (1945), 116 Mont. 542, 557, 155 P.2d 612, 619 (quoting 11 C.J.S. *Boundaries* § 11, p. 552). Moreover, in ascertaining the lines of land or in re-establishing the lines of a survey, the footsteps of the original surveyor, so far as discoverable on the ground by his monuments, should be followed and it is immaterial if the lines actually run by the original surveyor are incorrect. *Vaught*, 116 Mont. at 550, 155 P.2d at 616 (citing *Ayers v. Watson* (1891), 137 U.S. 584, 11 S.Ct. 201, 34 L.Ed. 803; *Galt v. Willingham* (5th Cir. 1926), 11 F.2d 757). *See also Buckley v. Laird* (1972), 158 Mont. 483,

491-92, 493 P.2d 1070, 1074-75.

¶40     Olson asserts that the District Court erred when it determined that Best improperly set the monuments for the northern boundary of the Big Horn Tract. However, Allen, who was Olson's own expert witness, testified that Best used improper methodology in surveying the Big Horn Tract.

¶41     The Big Horn Tract plat references two original government corners. Best utilized the "SW corner NE¼ SE¼ Sec. 32 T6S, R4E, M.P.M." as the starting point of his survey for the Big Horn Tract. Furthermore, rather than being the creator of the east-west quarter section line of Section 32, Best was only retracing it, and he retraced it incorrectly. The original government surveyors started at the corner of Sections 4, 5, 32 and 33 and proceeded north to establish the quarter section monument. As reflected by the location of his placed monuments, Best made no effort to follow the footsteps of the original government surveyors even though it was his duty as a surveyor. Best's failure to correctly locate and identify the original corners caused him to place his monuments for the northern boundary of the Big Horn Tract 108 feet south of the east-west quarter section line even though Plat E-52 shows the northern boundary lying along the east-west quarter section line.

¶42     Olson also argues that the District Court erred in determining that the deeds of conveyance for the Big Horn Tract lots are ambiguous. We disagree. All of the deeds of conveyance for the Big Horn Tract lots reference Plat E-52 which provides in the Certificate of Dedication signed by the Zollingers: "thence North eighty-nine degrees and fifty-two minutes East . . . along the North boundary of the Southeast one-quarter of said Section

14

Thirty-two. . . ." Moreover, the right uppermost portion of Plat E-52 depicts a dotted line extending from the northeast corner of the Big Horn Tract to the United States Government monument for the eastern terminal point of the east-west quarter section line, and provides the following language: "NE Corner NE¼ SE¼ Section 32 T6S, R4E, M.P.M."

¶43    Thus, Plat E-52 depicts the northern boundary monuments as being on the east-west quarter section line.  However, Best's placed monuments are located 108 feet south of the east-west quarter section line for Section 32.  Furthermore, Best located the east quarter corner of Section 32 outside of Highway 191 when it is actually located near the centerline of Highway 191.  Consequently, the District Court was correct in determining that the inconsistencies between the references on Plat E-52 and the location of Best's monuments create an ambiguity.

¶44    Olson further argues that the District Court erred in permitting the Judes' expert witness to testify about the Zollingers' intent in creating the Big Horn Tract.  Olson suggests that § 70-20-201, MCA, applies in this situation.  Section 70-20-201(1), MCA, provides that where there are definite and ascertained particulars in a description, the addition of others which are indefinite, unknown, or false does not frustrate the first mentioned particulars.

¶45    The Judes argue on the other hand that Olson fails to identify any indefinite, unknown particulars considered by the District Court.  The District Court cited in its conclusions the Certificate of Dedication's reference to the east-west quarter section line and Plat E-52's reference to the quarter corner.  We agree with the Judes that these references are definite and ascertainable and that Best's improperly placed monuments should be considered the

15

false particulars frustrating the conveyance.

¶46 Furthermore, Plat E-52 and the descriptions and landmarks contained therein (including the Certificate of Dedication signed by the Zollingers) are incorporated into the deeds of conveyance in the Judes' chain of title. This Court has previously held that

> [w]hen lands are granted according to an official plat of a survey, the plat itself, with all its notes, lines, descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls so far as limits are concerned, as if such descriptive features were written out on the face of the deed or grant itself.

*Vaught*, 116 Mont. at 548-49, 155 P.2d at 616 (citing *Pittsmont Copper Co. v. Vanina* (1924), 71 Mont. 44, 227 P.46; *Cragin v. Powell* (1888) 128 U.S 691, 9 S.Ct. 203, 32 L.Ed. 566; *Jefferis v. East Omaha Land Co.* (1890), 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872; *United States v. Otley* (9th Cir. 1942), 127 F.2d 988; *Ohlson v. Batterton* (Mo. 1921), 230 S.W. 110; *Read v. Bartlett* (Ill. 1912), 99 N.E. 345). We conclude that because Plat E-52 is part of the deeds of conveyance in the Judes' chain of title, the District Court was correct in allowing into evidence the Certificate of Dedication contained in Plat E-52.

¶47 Olson further argues that the District Court erred by considering evidence regarding the Zollingers' intent. Section 70-1-513, MCA, provides that "[g]rants are to be interpreted in like manner with contracts in general, except so far as is otherwise provided [by statute]." To that end, § 28-2-905(2), MCA, provides that extrinsic evidence concerning a written agreement may be considered to explain an extrinsic ambiguity. And, "[f]or the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that

16

the judge be placed in the position of those whose language he is to interpret." Section 1-4-102, MCA. Where a written instrument is ambiguous, extrinsic evidence may be utilized to discover the parties' intent. *Peterson v. Hopkins* (1984), 210 Mont. 429, 436, 684 P.2d 1061, 1065 (citing *St. Paul Fire & Marine Ins. Co. v. Cumiskey* (1983), 204 Mont. 350, 665 P.2d 223; *Adams v. Chilcott* (1979), 182 Mont. 511, 597 P.2d 1140).

¶48 Both expert witnesses, Allen and Chandler, testified that when they draft a certificate of dedication, they attempt to draft it according to the property owner's intentions. Moreover, both Allen and Chandler testified that the publication *Brown's Boundary Control and Legal Principles* (4th ed. 1995), is recognized as an authoritative and reliable authority on the subject of boundary control and related principles.

¶49 *Brown's* provides that the clearly expressed intent of the subdividers controls over all other survey references, including calls to monuments in the dedication. *Brown's*, at 303. We agree with the Judes that the following principles provided in *Brown's* are applicable in this matter:

> Principle 9. Where lines are actually located and marked on the ground as a consideration of the transaction and called for by the deed, the lines so marked most clearly show the intentions of the parties and are presumed paramount to other written considerations, senior rights and *clearly expressed contrary intentions being excepted.*

> Principle 10. Monuments called for in a deed, either directly or by a survey, or by reference to a plat that the parties relied on, are subordinate to senior rights, *clearly stated contrary intentions*, and original lines actually marked and surveyed, but are presumed superior to direction, distance, or area.

> Principle 11. Where there are conflicts between monuments called for and no senior right is interfered with, *the monument most clearly showing the*

17

*written intentions of the parties is controlling.*

Moreover, in its December 28, 2000 Findings of Fact and Conclusions of Law, the District Court adopted *Brown's* Principle 11 in making its determination because the location of Best's monuments conflicts with the location of the government's original monument for the east quarter corner of Section 32.

¶50    These fundamental survey principles provide that the parties' intent is paramount to all other considerations when interpreting surveys and conveyances. In the case *sub judice*, the Certificate of Dedication on Plat E-52 clearly shows that the Zollingers intended that the northern boundary of the Big Horn Tract extend to the east-west quarter section line and not to Best's erroneously located monuments.

¶51     Best failed to survey the Big Horn Tract pursuant to the Zollingers' clearly expressed intentions. Plat E-52's references to the government section line controls the location of the northern boundary of the Big Horn Tract.

> Relying on  previous decisions, courts have given surveyors guidance in the resolution of problems.
>> Three basic elements which have been identified are:
>> 1) An occupancy right that has ripened into a legal right extinguishes or becomes superior to all written title to occupied land.
>> 2) As between private parties in a land dispute, a senior right is superior to a junior right.
>> 3) *Written intentions of the parties are paramount.*

*Brown's,* at 249.

¶52    Accordingly, we hold that the District Court correctly determined that the Big Horn Tract's northern boundary is along the east-west quarter section line of Section 32.

18

**Issue 2.**

¶53     *Whether the District Court correctly awarded the relief sought by the Judes.*

¶54     The District Court concluded that because the northern boundary of the Big Horn Tract is the east-west quarter section line of Section 32, the Judes own what is currently described as Tract 1, COS 1898 and are entitled to the quiet and peaceful possession of that tract and to the improvements located thereon. The court also ordered that COS 1898 be removed from the records of the Gallatin County Clerk and Recorder and that a new instrument be prepared that describes the northern boundary of the Big Horn Tract as being along the east-west quarter section line of Section 32.

¶55     Olson argues that the District Court erred in quieting title in favor of the Judes and in ordering the removal of COS 1898 from the records of the Clerk and Recorder because COS 1898 was properly prepared and accurately identifies the property. Olson also argues that COS 1898 describes Tract 2 which was not at issue in this action and the court's ruling effectively destroys the description of Tract 2 and erroneously affects title to Tract 2.

¶56     The Judes argue on the other hand that because the District Court determined that the northern boundary of the Big Horn Tract is along the east-west quarter section line of Section 32, the court correctly quieted title in their favor. Furthermore, the Judes argue that since COS 1898 depicts the northern boundary of the Big Horn Tract 108 feet short of the east-west quarter section line, the District Court was correct in ordering COS 1898 removed from the records of the Gallatin County Clerk and Recorder and in ordering the Judes to file an instrument reflecting the Big Horn Tract's northern boundary along the east-west quarter

19

section line.

¶57 We agree with the arguments put forth by the Judes. As we held in the previous issue, the District Court correctly determined that the Big Horn Tract's northern boundary is along the east-west quarter section line of Section 32. As such, the Judes own what is currently described as Tract 1, COS 1898 and there is no justification for not quieting title to that parcel in the Judes' favor.

¶58 Furthermore, there is no reason to retain an erroneous plat on file in the Clerk and Recorder's office. Olson's argument that the court's ruling effectively destroys the description of Tract 2, which was not at issue in this matter, and erroneously affects title to Tract 2, is disingenuous. Ordering that a new instrument be prepared and filed that describes the northern boundary of the Big Horn Tract as being along the east-west quarter section line of Section 32 would not destroy the description of Tract 2, which lies to the south of the Big Horn Tract, or erroneously affect title to Tract 2 as Olson contends. Therefore, we hold that the District Court was correct in ordering the removal of COS 1898 from the Clerk and Recorder's records and in ordering that a new instrument be prepared that describes the correct northern boundary of the Big Horn Tract.

¶59 Olson also argues that he should have been allowed his costs of suit. However, pursuant to § 25-10-501, MCA, "the party in whose favor judgment is rendered" may be allowed costs of suit. Because the District Court quieted title in favor of the Judes, the court correctly awarded costs to the Judes.

¶60 Accordingly, we hold that the District Court correctly awarded the relief sought by

20

the Judes.

¶61    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

21

[MAP]