FILED

October 15 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0651

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 336N

EISINGER PROPERTIES, L.L.C., a
North Dakota Limited Liability Company,

        Plaintiff, Appellant and
        Cross-Appellee,

    v.

DAVID J. FILLER and KARIE L. FILLER,
WHITEFISH CREDIT UNION ASSOCIATION,
NATIONAL CITY MORTGAGE CO., and all other
persons, unknown, claiming or who might claim
any right, title, or estate of interest in or lien or
encumbrance upon the real property described
in the complaint adverse to plaintiff's ownership
or any cloud upon plaintiff's title thereto, whether
such claim or possible claim be present or contingent,

        Defendants, Appellees and
        Cross-Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                     In and For the County of Flathead, Cause No. DV 07-096C
                     Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant and Cross-Appellee:

                Angela M. LeDuc, Ken A. Kalvig, Kalvig & LeDuc, P.C.,
                Kalispell, Montana

        For Appellees and Cross-Appellants:

                Sean S. Frampton, Morrison & Frampton, PLLP, Whitefish, Montana

Submitted on Briefs: September 10, 2009

Decided: October 14, 2009

Filed:

_____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section 1, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. Its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 This claim arises out of the disputed ownership of a small parcel of real property located in Kalispell, Montana, just north of the intersection of Highway 93 and West Reserve Road. The disputed parcel is approximately 9 feet wide and between 800 and 870 feet long depending on the location of the Stillwater River bank. Either David and Karie Filler (Fillers) own this strip of land or Eisinger Properties (Eisinger) owns it. The Eleventh Judicial District Court concluded the Fillers own it. Eisinger appeals and the Fillers cross-appeal from the denial of their request for attorney fees. We affirm the District Court.

## ISSUES

¶3 A restatement of the dispositive issue on appeal is whether the District Court erred in finding that the 1954 Mackey fence represented the intended boundary between Tracts 4A/4AB and Tract 4C and, based on this finding, incorrectly concluded that the Fillers owned the disputed property.

¶4 The issue on cross-appeal is whether the District Court abused its discretion in denying the Fillers' request for attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

3

¶5    The three parcels at issue in this case—Tracts 4A, 4AB and 4C—are contiguous parcels located in Section 30, Township 29 North, Range 21 West in Flathead County. Given that the dispute before the District Court was the proper location of the boundary line between the northern parcels, Tracts 4A/4AB, and the southern parcel, Tract 4C, the parties presented, and the court relied upon, numerous historic documents pertaining to the legal description of this property. These documents included, but were not limited to, multiple deeds of sale, various surveys, highway right-of-way maps dating back to 1932, state records of where corner markers were located or placed, Government Land Office descriptions from 1872, and a 1968 Corporation Deed. We will not review or restate the details of all of these historic documents; however, we acknowledge their significance to the District Court's analysis, findings, and conclusion.

¶6    Prior to 1953, Ted and Ethel Borgen owned a large parcel of land at the intersection of Highway 93 and West Reserve Road. The 3 parcels at issue in this case were part of this larger single tract of land then owned by Borgens. In 1953, Borgens sold the northern 8 acres of their land to Don Mackey. These 8 acres were designated as Tract 4A. Mackey testified that no survey was conducted in conjunction with this sale; rather, he "stepped off" the 8 acres and Borgen concurred. The deed describes Tract 4A with measurements commencing from the "southwest corner of Section 30," i.e., the intersection of Highway 93 and West Reserve Road. Subsequently, Mackey had the property surveyed. Mackey stated that the county surveyor could not locate any type of monument, pin or marker to indicate the exact location of the "southwest corner of Section 30." The surveyor, however, located a boundary pin on Whitefish Stage Road

4

which runs parallel to Highway 93 and is substantially east of the referenced corner. Using this marker, the county surveyor established the location of Mackey's 8 acres and placed survey stakes designating Mackey's property. The end result of this survey was that Mackey got the acres he "stepped off." Mackey testified that in 1954 he and Borgen agreed upon the location of the boundary between Mackey's property and Borgen's, and Mackey constructed a fence. The fence remains where Mackey built it.

¶7     In 1956, Borgen sold the 5-acre parcel south of Mackey's property and north of property Borgen retained, to Smith. This 5-acre parcel was designated as Tract 4C. In Smith's original warranty deed describing Tract 4C there is no reference to the southwest corner of Section 30; rather, it established that the northern boundary of Tract 4C was Tract 4A's southern boundary. In a subsequent warranty deed between Borgen and Smith, Smith's property description referenced the southwest corner of Section 30.

¶8     In 1965, Mackey divided his property into two tracts. He retained ownership of the western 3 acres of his original parcel, which retained the designation of Tract 4A, and sold the remaining acres. This newly-created parcel was identified as Tract 4AB. The description of Tract 4AB also contained reference to the southwest corner of Section 30. As found by the District Court, there is no evidence that Mackey, Borgen or Smith ever had any issue with the location of the Mackey fence.

¶9     Over the next several decades, with the exception of Tract 4A which Mackey retained until 2002, these parcels, including the property Borgen retained after the Mackey and Smith transactions, changed ownership several times. Eisinger eventually acquired the most southwestern corner lot of the property retained by Borgen at the

corner of Highway 93 and West Reserve, the northern boundary of which is Tract 4C. The Fillers acquired Tract 4AB in 1993 and Tract 4A in 2002. In 2005, Tract 4C's owner had Tract 4C resurveyed (the Marquardt survey) in preparation for selling it to Eisinger. The Marquardt survey certified that the Mackey fence had been erected 9 feet into Tract 4C; therefore, according to this survey, the Fillers did not own the 9-foot swath of land that was directly north of the fence and ran the length of the fence, between 800 and 870 feet.

¶10 Eisinger purchased Tract 4C in 2006, intending to begin construction of an automobile dealership. The construction required use of the 9-foot disputed parcel. Fillers disagreed with the Marquardt survey and claimed ownership of all of Tracts 4A and 4AB up to the fence line. In February 2007, when it became apparent the parties could not resolve the issue, Eisinger sued the Fillers. Eisinger sought to quiet title, to obtain a declaration that the legal boundary of the property was as certified by the Marquardt survey, and to obtain an injunction prohibiting the Fillers from interfering with Eisinger's use of the property as surveyed.

¶11 The Fillers answered the Eisinger's complaint and filed a counterclaim to quiet title, to obtain a declaration that they owned the property up to the Mackey fence line, for damages for adverse possession, and for attorney fees and costs. Both parties presented numerous historical documents to the District Court in support of their respective positions.

¶12 The District Court denied Eisinger's request for an injunction and ordered that the status quo be maintained until a trial could be held. A bench trial was conducted in May

6

2008. In November 2008, the District Court issued its Findings of Fact, Conclusions of Law and Order (Order) in which it held that the Mackey fence correctly established the property boundary between the parcels; therefore, the Fillers rightfully held ownership of Tracts 4A and 4AB to the fence line. The court awarded the Fillers their costs but not their attorney fees. Eisinger appealed and the Fillers cross-appealed seeking attorney fees.

## STANDARDS OF REVIEW

¶13 We review a district court's findings of fact to determine if they are clearly erroneous and its conclusions of law for correctness. *Monroe v. Marsden*, 2009 MT 137, ¶ 20, 350 Mont. 327, 207 P.3d 320 (citation omitted). We review the court's grant or denial of attorney fees for an abuse of discretion. *Trustees of Indiana University v. Buxbaum*, 2003 MT 97, ¶ 15, 315 Mont. 210, 69 P.3d 663 (citation omitted).

## DISCUSSION

¶14 *Issue 1: Did the District Court err in finding that the 1954 Mackey fence represented the intended boundary between Tracts 4A/4AB and Tract 4C and, based on this finding, incorrectly conclude that the Fillers owned the disputed property?*

¶15 Eisinger argues on appeal that the District Court erred by relying on Mackey's testimony rather than relying *exclusively* on the past deeds which, according to Eisinger, unambiguously establish that the common boundary between Tracts 4A/4AB and Tract 4C was at a location derived by measuring from the "southwest corner of Section 30." Eisinger asserts that the Marquardt survey determined the boundary line by measuring from the prescribed corner, as required in the deeds, and established that the Mackey

7

fence encroached upon Tract 4C by 9 feet. Eisinger argues that the District Court erred in considering extrinsic evidence.

¶16    The District Court tracked the purchases and sales of these parcels and the legal descriptions at the time of purchase. The court noted that while the deeds referenced the southwestern corner point, several of the historic documents indicated that a corner marker for the "southwestern corner of Section 30" could not be found for many years. It observed that some of the documents referenced the Mackey fence as a departure point for the legal description of various other parcels. The court also found that it did not appear that there was an identifiable corner pin until 1971 when a private survey references a "spike set" at that location. The court found that this spike was probably the corner pin used in the Marquardt survey. The District Court also found that the spike had been placed several years after Tracts 4A and 4C had been established and after Tract 4A had been divided. The court stated it was not convinced by the evidence presented that the 1971 spike is located "in the exact location" as the original Section Corner established by the U.S. Bureau of Land Management in 1872 and re-surveyed in 1891.

¶17    Relying on *Olson v. Jude*, 2003 MT 186, ¶ 48, 316 Mont. 438, 73 P.3d 809, in which we recognized the publication, *Brown's Boundary Control and Legal Principles* (4th Ed. 1995), as an authoritative and reliable source for resolving property boundary disputes, the court concluded that, in light of conflicting evidence, the best available evidence indicated that the Mackey fence established the boundary line as surveyed in 1954 and reflected the intention of the original parties in dividing the parcel.

8

¶18 It is appropriate to decide this case pursuant to Section 1, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. The District Court's findings are not clearly erroneous, nor is its conclusion based on those findings incorrect. While some of the original deeds, as argued by Eisinger, unequivocally state that the metes and bounds of the property should commence at the "southwestern corner of Section 30," at the time these deeds were drafted and executed, other evidence suggests that a marker did not exist in that spot. Moreover, acknowledging that both Ted and Ethel Borgen are deceased and cannot corroborate Mackey's testimony, the District Court was tasked with rendering a decision in the face of conflicting evidence. It is not this Court's role to consider whether the evidence would support findings different from those made by the District Court. *LeFeber v. Johnson*, 2009 MT 188, ¶ 19, 351 Mont. 75, 209 P.3d 254. The fact is that the court's findings have substantial support in the evidence and are not clearly erroneous, and the conclusions of law flowing therefrom are not incorrect. For this reason, we affirm the District Court's conclusion that the Fillers are the lawful owners of the parcel in dispute.

¶19 We also affirm the District Court's denial of the Fillers' attorney fees. The Fillers did not establish that the District Court abused its discretion in denying such fees.

## CONCLUSION

¶20 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA O. COTTER

9

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE