FILED
10/02/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 20, 2019 Session

## GLORIA JUANITA MILTON v. DONALD POWELL ET AL.

Appeal from the Chancery Court for Campbell County
No. 7CH1-2017-CV-11    Elizabeth C. Asbury, Chancellor

_____

No. E2018-01904-COA-R3-CV
_____

This case presents a boundary line dispute between the owners of adjacent properties. Gloria Juanita Milton (plaintiff), owner of a roughly 2.44-acre lot in the Morton Acres subdivsion in Campbell County, brought this action against the owners of the adjacent lot to the north, Donald Powell and Donna Powell Fredricks Carson (defendants). The issue at trial was the location of the boundary line between the properties. Each side hired a surveyor. Plaintiff's surveyor, William Easter, presented a survey of plaintiff's property that conformed very closely to the calls and boundaries established by the original subdivision plat. Defendants' surveyor, Dwight Crutchfield, presented a survey of the boundary line that gave defendants property in the amount of about 0.46 acre more than that described in the subdivison plat and Easter's survey. The trial court credited the survey presented by plaintiff and established the boundary line as presented in the Easter survey. Defendants appeal, arguing that the trial court erred by disregarding well-established principles for determining disputed boundaries as prescribed in *Thornburg v. Chase*, 606 S.W.2d 672 (Tenn. Ct. App. 1980) and *Wood v. Starko*, 197 S.W.3d 255 (Tenn. Ct. App. 2006). We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which and THOMAS R. FRIERSON, II, and KENNY ARMSTRONG, JJ., joined.

J. Stephen Hurst, LaFollette, Tennessee, for the appellants, Donald Powell and Donna Powell Carson.

Thomas J. Tabor, Jr., Tazewell, Tennessee, for the appellee, Gloria Juanita Milton.

**OPINION**

**I.**

On May 27, 1975, the Esco Morton farm was subdivided and the plat for the subdivision, called Morton Acres, was recorded. The original surveyor and creator of the subdivision plat was George M. Phillips. Plaintiff purchased Lot 34 in 1989 and has lived in a residence on the property since then. Her property is a roughly rectangular-shaped plot running east to west lengthwise. The east boundary is Lance Lane and the west boundary is Cedar Creek. Defendants own Lot 35, which lies to the north. Thus, the disputed boundary line is plaintiff's north border and defendants' south border. According to the subdivision plat, it is 755 feet long and bears a call of North 80-30W.

As found by the trial court in its final judgment, "the parties lived in peace until approximately 2012 when Defendants extended a fence" and after that, "problems ensued between the parties." In 2017, plaintiff filed this action to quiet title, seeking injunctive relief and declaratory judgment. At trial, the parties and their surveyors testified. It was agreed and stipulated that the location of plaintiff's northeastern corner (and defendants' southeastern corner) was marked by an iron pin or post on Lance Lane found by the surveyors. The surveyors agreed that the boundary line runs in a straight line generally west from this corner to a point in the middle of the creek. Plaintiff's surveyor, Easter, testified as follows regarding his search for a marker on plaintiff's northwestern corner:

> We calculated where the rear pins should have been from the plat of record using Mr. Phillips' survey data and did an extensive search down at the creek. We never found anything. They washed away or they were never set in the first place.

Because he found no monuments of significance to physically mark the boundary line, Easter utilized the call provided on the subdivision plat and turned essentially the same angle from the known boundary line as did the original surveyor. The following diagram is a reproduction of Easter's survey, with handwritten notes showing the owners of each property, their proposed boundary lines, and the undisputed corner:



Figure -3-

Defendants' surveyor, Crutchfield, disagreed with Easter about the existence of artificial monuments pertinent to the boundary line. He testified that he discovered old fence posts in the disputed area. Crutchfield and the defendants argued that the old fence marked the boundary line. Crutchfield stated that he found an old iron pin on the east bank of the creek that ostensibly marked the disputed corner. He admitted, however, that the subdivision plat did not call for a marker at the location where he found it. He didn't know who put the pin there, and neither he nor Easter thought it was done by the original surveyor Phillips. Plaintiff denied that there were fence posts in the disputed area and produced old photographs of her back yard that she argued proved this assertion. She took the position that any old fence posts in the wooded area in dispute did not mark a boundary line, and pointed out that the subdivision plat contains no reference to or marking of any fence posts.

There is a chain link fence in defendants' back yard that was constructed around 1996. The south border of that fence is on or near the line established by Crutchfield. The parties disagreed sharply over whether defendants extended the fence around 2012. Defendants testified that they did not, and that the fence remained unchanged since it was built in the mid-1990s. Plaintiff testified that defendants extended the chain link fence in a southward direction to encroach on her property.

Crutchfield did not do a full survey of either plaintiff's or defendants' parcel, but produced a drawing that showed his estimation of the disputed boundary line. He turned the angle of the line about three degrees smaller than Easter and Phillips, resulting in significant deviation from the calls on the subdivision plat. For example, the subdivision plat marks the western border of Plaintiff's property – the one that runs along the creek – as being 170 feet long. Crutchfield's survey reduces the length of this line to approximately 104 feet. According to the subdivision plat, plaintiff's Lot 34 is 2.44 acres in size. Easter's survey puts this number at 2.46 acres, and Crutchfield's survey reduces plaintiff's acreage to slightly less than 2 acres.

The trial court found and held as follows in its final judgment:

> Defendants' surveyor testified that he could not verify that the pin located near the creek was from the original plat.

> *       *       *

> Defendants place significant reliance on the existence of old fence posts. Defendants' chain link fence is at or near these

-4-

fence posts. There are several old fence posts in the area of dispute. Plaintiff denies that there are old fence posts on or near the boundary and denies that any fence posts would be of any significance. No fence or fence posts are shown on the 1975 plat.

\* \* \*

According to the proof before the Court, the preparer of the original plat and Mr. Easter turned the angle at 74-45-31. Mr. Crutchfield turned the angle at 70.51 degrees. That change in the angle resulted in the .46 acre disputed area.

\* \* \*

this Court adopts the plat prepared by surveyor Easter (Exhibit 2). Thus, the boundary line as set forth on Exhibit 2 shall be permanently marked.

Defendants timely filed a notice of appeal.

## II.

The issue presented, as quoted from defendants' brief, is whether the trial court "erred in failing to apply the established case law set forth in *Thornburg v. Chase*, 606 S.W.2d 672 (Tenn. Ct. App. 1980)" and "improperly applying the findings in the case of *Wood v. Starko*, 197 S.W.3d 255 (Tenn. Ct. App. 2006)," and thereby erred in its establishment of the boundary line.

## III.

As we observed in *Bridgewater v. Adamczyk*, 421 S.W.3d 617, 627-28 (Tenn. Ct. App. 2013) (quoting *Dillehay v. Gibbs*, No. M2010–01750–COA–R3–CV, 2011 WL 2448253, at \*6 (Tenn. Ct. App., filed June 16, 2011)):

The usual standard of review applicable to bench trials applies in boundary disputes. *Jackson v. Bownas*, No.

E2004–01893–COA–R3–CV, 2005 WL 1457752, at *6 (Tenn. Ct. App. June 21, 2005). This Court conducts a *de novo* review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

"In resolving a boundary line dispute, it is the role of the trier of fact to evaluate all the evidence and assess the credibility of the witnesses." *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999) (citing *Norman v. Hoyt*, 667 S.W.2d 88, 91 (Tenn. Ct. App. 1983)). "Where there is a conflict in testimony, the trial court is in a better position than this Court to observe the demeanor of the witnesses and evaluate their credibility." *Jackson*, 2005 WL 1457752, at *6. Thus, we will give great weight to a trial court's determinations as to the credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). This deferential standard specifically applies in a boundary dispute where a trial court must choose between two competing surveys. *Jackson*, 2005 WL 1457752, at *6 (citing *Mix*, 27 S.W.3d at 514; *Stovall v. Bagsby*, No. M2002–01901–COA–R3–CV, 2003 WL 22768677, at *2 (Tenn. Ct. App. Nov. 24, 2003); *Edwards v. Heckmann*, No. E2002–02292–COA–R3–CV, 2003 WL 21486987, at *4–5 (Tenn. Ct. App. June 25, 2003)).

## IV.

The well-established principles guiding a court's determination of a disputed boundary line, as recognized by both parties in this case, are as follows:

The priority of markers in a boundary dispute is well settled in Tennessee. . . . [I]n *Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980), this Court stated that "[i]n determining disputed boundaries, resort is to be had first to

natural objects or landmarks, because of their very permanent character; next, to artificial monuments or marks, then to the boundary lines of adjacent landowners, and then to courses and distances."

\*     \*     \*

It has been declared that all the rules of law adopted for guidance in locating boundary lines have been to the end that the steps of the surveyor who originally projected the lines on the ground may be retraced as nearly as possible; further, that in determining the location of a survey, the fundamental principle is that it is to be located where the surveyor ran it. Any call, it has been said, may be disregarded, in order to ascertain the footsteps of the surveyor in establishing the boundary of the tract attempted to be marked on the land; and the conditions and circumstances surrounding the location should be taken into consideration to determine the surveyor's intent.

The original survey must govern if it can be retraced. It must not be disregarded. So, too, the places where the corners were located, right or wrong, govern, if they can be found. In that case a hedge planted on the line established by original survey stakes was better evidence of the true line than that shown by a recent survey. In making a resurvey it is the surveyor's duty to relocate the original lines and corners at the places actually established and not to run independent new lines, even though the original lines were full of errors.

The line actually run is the true boundary, provided the essential survey can be found and identified as the one called for, and prevails over maps, plats, and field notes. The lines marked on the ground constitute the actual survey and where those lines are located is a matter to be determined by the jury from all the evidence. If the stakes and monuments set at the corners of the parcel in making the survey have disappeared, it is competent to show their location by parol evidence.

* * *

> Clearly encompassed in this rule is the fact that *it is the monuments laid out by the original surveyor, if they can be located, which govern the boundaries*, even if the actual survey used in the plat is in error.
>
> Moreover, in ascertaining the lines of land or in re-establishing the lines of a survey, the footsteps of the original surveyor, so far as discoverable on the ground by his monuments, should be followed and it is immaterial if the lines actually run by the original surveyor are incorrect.

*Wood*, 197 S.W.3d at 258, 259-60 (emphasis added; quoting *Sellman v. Schaaf*, 26 Ohio App. 2d 35, 269 N.E.2d 60, 66 (1971), *Olson v. Jude*, 316 Mont. 438, 73 P.3d 809, 815 (2003); internal citations, quotation marks and ellipses omitted).

The significance of certain artificial monuments – old fence posts, and an old marker pin located at or near the creek by Crutchfield – was disputed by the parties. Thus, part of the trial court's duty was to determine whether any of these monuments were laid out or referenced by the original surveyor Phillips. As the trial court noted, the subdivision plat does not refer to a fence along the disputed line. Neither of the parties' deeds is of assistance because they simply refer to "Lot number Thirty Four" and "all of lot #35" as shown on the subdivision plat. Regarding the disputed artificial monuments, Easter stated as follows:

> THE COURT: And the only true monument involved in this situation is the creek and the original pin [agreed to mark plaintiff's northeast corner]?
>
> [EASTER]: The creek and the . . . pins along the Lance Lane match the plat of record but we didn't find anything out there besides that, that we thought was original information. So we went to the rules of construction, which was what we got to do, and turned the same angles that Mr. Phillips turned.

Crutchfield testified as follows about the old pin he located:

THE COURT: Okay. I've got a couple questions. I believe you testified that you did find a pin at or near the creek.

THE WITNESS: Yes.

THE COURT: Was that Phillips' pin or somebody else's pin or do you know?

THE WITNESS: Your Honor, I think it could have been a prior surveyor had been in there. Not Mr. Phillips' work.

Easter agreed, stating "I sure don't believe it's George Phillips'" pin. The trial court did not err by attaching little or no significance to the old pin found by Crutchfield on the creek.

The proof about the old fence posts is similarly ambivalent. The existence of some of them was disputed by both sides, each of which presented photographs. There was no proof about their age, whether they existed when Phillips conducted his survey, or whether they ever were intended to mark a boundary. Phillips made no reference to them. The trial court obviously afforded them little weight after observing all of the evidence, and acted within its discretion in doing so.

As already stated, the parties presented sharply contrasting evidence regarding defendants' chain link fence. Defendant Donald Powell testified that the fence was erected in 1995 or 1996 and had not been extended. Defendant Donna Powell Carson's ex-husband, Jeff Fredrick, similarly testified. Plaintiff Gloria Milton conversely testified that the fence was later extended to encroach on her property, stating:

THE COURT: When are you saying that they got on your property?

THE WITNESS: After my husband and I got divorced, sometime after that time.

THE COURT: Was that in 2012?

THE WITNESS: '12. Uh-huh.

THE COURT: Was it like 2014? 2015?

THE WITNESS: It was 2014 that I was at home, because I had been – I had fell and broke my arm and I was at home. Like I said, I worked in Knoxville. But at that time, I was at home and he was – Shawn was back there cutting trees and that's when I saw that the fence had been moved over.

We observe that whether the fence was extended or not, it encroaches upon plaintiff's property as established by Easter's survey and the trial court's order. Nevertheless, the trial court, after having observed the witnesses live, resolved this credibility issue by finding that in "approximately 2012 . . . Defendants extended a fence." The resolution of the boundary line issue was dependent upon the trial court's assessment of the credibility and demeanor of the witnesses. As we stated in **Bridgewater**, "[i]n light of the great deference this Court gives to a trial court's decision between competing surveys, we find no error in the trial court's finding" that the Easter survey established the boundary line. 421 S.W.3d at 628.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellants, Donald Powell and Donna Powell Carson. This matter is remanded for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE

-10-