No. 99-279

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 130

300 Mont. 5

3 P. 3d 109

WILLIAM D. TESTER, STEPHEN F.

TESTER, and PATRICIA A. WALCH,

Plaintiffs and Respondents,

v.

JOHN J. TESTER; EDITH NORA TESTER,

and E.T. RICH; 360 RANCH, INC.,

DELANEY AND COMPANY, INC.; DONALD

and SARAH HAMMERSMARK; ERIK and ANNA

HAMMERSMARK; VIRGIL and ANN MAE

TERRY; CARL L. STUCKY; JOHN CLARK

ADAMS; SIFFERT; J. J. and EDNA TRACY

WHITE; ERMA A. and H.R. REID; NELLIE W.

RICH; JAMES O. and GLADYS FUNK; FLOYD D.

BUTLER; GEORGE R. McCARTY; ANNE M. HOLMES

unknown heirs or unknown devisees of any deceased person;

and all other persons unknown, claiming or who claim any

right, title, or interest in, or lien or encumbrance upon,

the real property described in the Complaint, adverse

to the Plaintiffs' title thereto, whether such claim be

present or contingent,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael E. Wheat, Julieann McGarry, Cok, Wheat, Brown & McGarry, Bozeman,
Montana

For Respondent:

Charles F. Angel, Angel Law Firm, Bozeman, Montana

Submitted on Briefs: December 2, 1999

Decided: May 18, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 Appellant 360 Ranch, Inc. (360) appeals from the March 18, 1999 Findings of Fact, Conclusions of Law, and Order of the Eighteenth Judicial District Court, Gallatin County, quieting title to certain property in favor of Respondents William Tester, Stephen Tester, and Patricia Walch (the Testers), and against 360. We reverse.

¶2 360 raises the following issues on appeal:

I Did the District Court err in awarding judgment quieting title to the disputed property in favor of Testers and against 360?

II Did the District Court err in awarding costs of suit to the Testers?

STATEMENT OF FACTS

¶3 At the heart of this quiet title action lies a boundary dispute. The Testers and 360 each own property in Section 17, Township 1 North, Range 7 East of the Montana Principal Meridian. The property is located in Bridger Canyon, just north of Bozeman, Montana. Generally speaking, the Testers own land in the east half of the Section while 360 owns land in the west half. Two roads of public record run through the Section in a north-south direction. One is the 1891 County Road (County Road), the other is the 1948 State Highway (State Highway).

¶4 In 1891, the Gallatin County Commissioners adopted as the official County Road an existing road which ran in a north-south direction through Bridger Canyon. The official location of the County Road remains as it existed when it was originally surveyed by the

County Surveyor in 1891, but at some point thereafter there were "realignments" in portions of the road creating a separate "traveled way." No evidence in the record indicates that the realignments were official, who made them, or when they occurred, and the original County Road remained the only official public road in the Section until the establishment of the State Highway in 1948. At some point the County Road was realigned approximately 200 feet to the west creating an isolated parcel of land bordered on the east by the official County Road, and on the west by the newly created "traveled way," but the County Road has never been officially abandoned by the County.

[NOTE: SEE HARD COPY OF OPINION FOR MAP

INSERTED AT THIS POINT IN OPINION

¶5 In 1948, the State Highway Commission built and graveled a state highway through Bridger Canyon. In some places the highway was constructed directly on top of the County Road while in other places, it was constructed on top of the existing "traveled way." In the southern part of the Section, the State Highway and the County Road run parallel to one another, with the State Highway running to the west of the County Road. However, toward the middle of Section 17, the State Highway crosses over and runs on the east of the County Road for a stretch. In the north end of the Section, the State Highway once again crosses back to the west side of the County Road. It is the ownership of the island of property in the south end of the Section bordered on the west by the State Highway and on the east by the County Road which is in dispute. Evidence in the record indicates that the importance of the parcel is that 360 plans a subdivision on its property west of the Highway and the property in question would add acreage and therefore density rights to the property.

¶6 360 asserts the Testers' predecessors-in-interest intended the County Road to be the boundary line between the parties' property, thereby placing ownership of the disputed parcel with 360. The Testers contend the grantors in their chain intended the State Highway (or the traveled way beneath it) to be the boundary line, making the Testers the rightful owners of the disputed parcel.

¶7 On October 15, 1996, the Testers commenced an action to quiet title to all land in the

Section lying east of the center line of the County road, on the basis of both legal title and adverse possession. The Testers later stated their claim as "all land lying east of the center line of a public road." 360 denied the Testers' claims and asserted it owned the disputed property. Trial was held in October, 1998, and in March, 1999, the District Court issued its Findings of Fact, Conclusions of Law, and Order quieting title in favor of the Testers and awarding them the costs of the suit.

¶8 I Did the District Court err in awarding judgment quieting title to the disputed property in favor of Testers and against 360?

## STANDARD OF REVIEW

¶9 We review a district court's findings of fact to determine whether they are clearly erroneous. *State v. Wooster*, 1999 MT 22, ¶ 2, 293 Mont. 195, ¶ 2, 974 P.2d 640, ¶ 2 (citing *Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). We review a district court's conclusions of law to determine whether the interpretation is correct. *Cenex Pipeline L.L.C. v. Fly Creek Angus, Inc*., 1998 MT 334, ¶ 22 , 292 Mont. 300, ¶ 22, 971 P.2d 781, ¶ 22 (citing *Carbon County v. Union Reserve Coal Co*. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686).

¶10 This Court has adopted a three-part test to determine whether a district court's finding of fact is clearly erroneous. "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a definite and firm conviction that a mistake has been made." *Matter of Estate of Hunsaker,* 1998 MT 279, ¶ 26, 291 Mont. 412, ¶ 26, 968 P.2d 281, ¶ 26 (citing *DeSaye*, 250 Mont. at 323, 820 P.2d at 1287).

¶11 The District Court found that the resolution of the parties' dispute depended on whether the County Road or the State Highway serves as the boundary line between the parties' property. The District Court concluded that the State Highway is the legal boundary, and that the Testers own the disputed property through legal title and adverse possession. 360 claims the District Court's decision is not supported by substantial evidence and is incorrect.

¶12 The parties agree ownership of legal title to the disputed property turns on whether the grantors in the Testers' chain of title intended the County Road or the State Highway to serve as the western boundary of the Testers' property. 360 asserts that in determining

whether the Testers have legal title to the land in question, this Court must examine the deeds in the Testers' chain of title to determine what was granted to them. In construing such deeds, 360 contends we should rely on the plain language which has repeatedly described the property as lying either east of the "public road," "country road," or "old county road" not east of the "State Highway" or east of the "traveled way" which later became the State Highway. Therefore, 360 argues that according to the plain language of the deeds, the County Road and not the State Highway is the proper boundary between the properties.

¶13 The Testers claim the District Court correctly determined they own legal title to the disputed property because the State Highway and not the County Road has been consistently treated as their western boundary. They maintain the evidence clearly shows that all parties except 360, including both parties predecessors-in-interest, considered the road which became the State Highway to be the dividing line between the properties. As a result, they assert that references in the deeds in their chain of title to the "public road" or "county road" actually refer to the "traveled way" which is today the State Highway. Furthermore, the Testers assert that the District Court correctly determined they owned the property in question by way of adverse possession.

¶14 The District Court concluded that the Testers proved their legal title to the disputed property with "clear and satisfactory proof of title," that the center line of the State Highway is the boundary line between the properties. The court stated,

> [t]he testimony of the three plaintiffs, the deeds in plaintiffs' chain of title, the plats of Section 17 from the County Clerk and Recorder's Office, the County tax records and the State Highway records support plaintiffs' claim to all property east of the Highway because the evidence shows that the "Public Road as the same is now constructed" was consistently treated as the western boundary of the plaintiffs' property.

The court also concluded as a matter of law that the Testers established adverse possession by claiming the property under color of title and showing that their possession of the disputed property has been "actual, visible, exclusive, hostile, and continuous" for the period of five years immediately before the complaint was filed.

Legal Title

¶15 In order to determine whether the District Court was correct in concluding that the Testers had legal title to the disputed property, we begin by examining the Testers' chain of title. In 1903, the entirety of Section 17, containing 640 acres and owned by the United States Government, was granted to the Northern Pacific Railway Co. In 1907 Northern Pacific conveyed the entire section to Norris Davies subject to "an easement in the public for any public road or roads heretofore laid out or established, and now existing over and across any part of said described land." In 1916, Davies conveyed to Antone Tester "all that part of Section 17. . . lying east of the public road as the same now crosses said section, . . . containing three hundred and twenty acres of land, more or less. . . ." In 1920, Davies conveyed to John and Logan Tester all that part of the west half of Section 17 "lying west of the County Road, as the same is now located through said land." The Testers are successors-in-interest to Antone Tester while 360 is the successor-in-interest to John and Logan Tester.

¶16 Throughout the Testers' chain of title, there are many inconsistencies including the unclear use of the terms "public road" and "county road" in reference to the property boundary, the contradictory conveyance of easements, conveyances of differing amounts of acreage, and references to an unrecorded survey. However, the parties contend that the Funk deed is the key point of confusion in the Testers' chain of title.

¶17 In March of 1951, James Funk conveyed by Warranty Deed to Logan Tester, who has since conveyed away his interest in the west half of Section 17, and Floyd Butler, all that part of Section 17, "lying East of the old County Road as existing over and across said Section prior to the year 1950, according to the map and plat thereof on file and of record in the office of the County Clerk and Recorder of Gallatin County, Montana."

¶18 In August of 1951, Butler conveyed to Logan Tester his portion of the land "lying East of the Old County Road as existing over and across said section prior to the year 1950, according to the map and plat thereof on file and of record in the office of the County Clerk and Recorder of Gallatin County, Montana . . . ."

¶19 In 1982, Logan Tester conveyed a Highway Right-of-Way Easement to the State of Montana on the east side of the Highway. Also in 1982, Donald and Sandra Hammersmark conveyed a Highway Right-of-Way Easement to the State of Montana on the west side of the Highway.

¶20 In 1992, Following Logan Tester's death, a Deed of Distribution was recorded with

the Gallatin County Clerk and Recorder conveying to the Testers all that part of Section 17, "lying East of the old County Road as existing over and across said Section prior to the year 1950, according to the map and plat thereof on file and of record in the office of the County Clerk and Recorder of Gallatin County, Montana."

¶21 360 does not dispute the District Court's Findings of Fact, but argues that the court reached the wrong legal conclusion based on those facts by holding that (1) the Testers proved their legal title with clear and satisfactory proof, and (2) the Testers established that the State Highway is the western boundary of the Testers' property rather than the County Road.

¶22 360 argues that Funk explicitly stated in the deed to Tester and Butler that he was transferring all land "lying East of the old County Road as existing over and across said Section prior to the year 1950, according to the map and plat thereof on file and of record in the office of the County Clerk and Recorder of Gallatin County" and that we must therefore interpret the unambiguous language as written. The parties claim it is this transfer which is decisive in this action as the first to describe the boundary between the properties as "the County Road as existing . . . prior to 1950." The Testers claim the traveled way beneath the highway has consistently been treated as their boundary, and that Funk intended not the County Road but the traveled way to be the boundary. 360 contends that if Funk intended to transfer all land east of the State Highway, as the Testers suggest, he would have used the words "all land lying East of the State Highway. . . ," rather than distinguishing the boundary as "east of the old County Road."

¶23 The burden in a quiet title action is on the plaintiff on all issues arising upon the essential allegations of the complaint. The plaintiff must prove title in himself if the answer denies his title. *McAlpin v. Smith* (1950), 123 Mont. 391, 394, 213 P.2d 602, 603. Want of title in plaintiff renders it unnecessary to examine that of defendant. *McAlpin*, 123 Mont. at 395, 213 P.2d at 603-04. Furthermore, the burden of proof is on the plaintiff to establish the true location of a disputed boundary line. *Brady v. State Highway Commission* (1973), 163 Mont. 416, 421, 517 P.2d 738, 741.

¶24 Neither party contends that the District Court erred in its Findings of Fact. 360 merely argues the court erred in concluding that based on those findings the State Highway was the boundary point between the parties. We agree.

¶25 The plain language of the Funk deed is unambiguous. An unambiguous deed must be

interpreted according to its language as written, without resort to extrinsic evidence of the grantor's intent. *Ferriter v. Bartmess* (1997), 281 Mont. 100, 103, 931 P.2d 709, 711. For proper construction of an instrument § 1-4-102, MCA, allows us to examine the "circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it." The record indicates that the County Road was the only official road in the Section from 1891 to 1948 and was recorded as being in its original location until the State Highway was constructed in 1948.

¶26 In a similar quite title action the boundary between properties was in question where an earlier deed had conveyed property "east of the wagon road . . . ." Defendant's alleged the "wagon road" was the present county road while Plaintiffs alleged that the "wagon road" was a certain wagon road shown on a US Government Survey map of 1886. The district court found that the wagon road was the same "wagon road" as described in the 1899 and 1903 deeds. Upholding the district court's finding on appeal, we stated

> [t]he record indicates county roads were so named in all plats, surveys, and road books offered into evidence. If the scrivener intended the road designated in the deeds to be the present county road, or a dedicated county road at roughly the present road's location, he would have said county road in the deeds.

*Johnson v. Jarrett (1976), 169 Mont. 408, 414, 548 P.2d 144, 148.*

¶27 If Funk intended to convey east of the State Highway which was constructed only three years earlier, he certainly could have done so. Instead, he explicitly conveyed east of the old County Road. To conclude that Funk's language is ambiguous and that he really meant to convey east of the State Highway would be to read an intent into his language which is simply not justified.

¶28 We conclude that based on the unambiguous language of the deed, and the circumstances under which it was made, including the plats of Section 17, and the State Highway records, the District Court's conclusion that the State Highway is the legal boundary between the properties was incorrect.

### Adverse Possession

¶29 In concluding that the Testers had proved their claim to the disputed property with clear and satisfactory proof of legal title the District Court stated they had proved that "the Public Road as the same is now constructed" was consistently treated as the western

boundary of their property. The court also found that the Testers established an adverse possession claim. Under the adverse possession doctrine, property must be claimed under a color of title, or by possession which is actual, visible, exclusive, hostile, and continuous for the statutory period. *Burlingame v. Majerrison* (1983), 204 Mont. 464, 470, 665 P.2d 1136, 1139; § 70-19-411, MCA. Additionally, the claimant cannot prove adverse possession of any land on which he did not pay taxes. *Castles v. Lawrence* (1983), 203 Mont. 421, 425, 662 P.2d 589, 591.

¶30 360 claims that the District Court's conclusion that the Testers have paid taxes on the property which is located east of the State Highway for the full statutory period of five years is error. 360 asserts the tax assessments show that the County assessed taxes to the Testers for property "east of the road" not east of the State Highway. Furthermore, they claim that their own records show that they have paid the taxes on the disputed property for the appropriate five years.

¶31 The Testers contend that § 70-19-411, MCA, does not require payment of taxes on all property to which they claim adverse possession, but only all taxes legally levied and assessed. They further assert they have been assessed taxes on 345 acres, and since 1989 no one but the Testers have paid taxes east of the highway. Section 70-19-411, MCA states:

> [i]n no case shall adverse possessions be considered established under this code unless it shall be shown that the land has been occupied and claimed for a period of 5 years continuously and the party or persons, their predecessors, and grantors have during such period paid all the taxes, state, county, or municipal, which have been legally assessed upon said land.

Section 70-19-411, MCA.

¶32 The county tax assessments show that the Testers paid taxes as assessed on "all E of RD less HW 17 in 7E 345.30 acres. . . ." 360 paid taxes as assessed on "W 1/2 NW 1/4 & SE 1/4 NW 1/4 W of Road less HW & SW 1/4 W of Road less HW 17 in 7E 244.08 acres. . . ." Arletta Derleth, Office Supervisor of the Gallatin County assessment office stated that she could say only that the Testers are "paying taxes on the property that's east of that road, whatever that road is."

¶33 The tax assessments indicate that the Testers have been assessed and paid taxes on all

property east of "the road," 360 has been assessed and paid taxes on all property west of "the road." The record shows only two roads in existence in the area of dispute and the State Highway is referred to by name in the assessment. In the south of Section 17, the County Road runs to the east of the State Highway. Toward the middle of the Section, the two roads cross and the County Road runs on the west of the State Highway. Finally, toward the north of the Section, the roads cross again and the County road returns to the east side of the Highway forming a rough "figure 8." The tax assessments show that the Testers have been assessed and paid taxes on the property east of the road not including the highway (which runs to the east of the County Road in the northern part of the section), and 360 has been assessed and paid taxes on the property west of the road minus the Highway (which runs to the west of the Old County road in the south of the Section). Where the record is not clear regarding the land on which the plaintiff has paid taxes, the claimant cannot prove adverse possession. *Castles*, 203 Mont. at 425, 662 P.2d at 591.

¶34 There is insufficient evidence to show that the Testers have paid taxes on the property in question which is to the west of the County Road and to the east of the State Highway. Therefore, because the evidence does not support the finding that the Testers have paid taxes on the property at issue, the District Court's conclusion that the Testers had proven a claim for adverse possession is incorrect.

¶35 II Because the Testers did not succeed in their action to quiet title in the property, the District Court improperly assessed the costs of suit to 360.

¶36 Reversed.


/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ JAMES C. NELSON