

DA 10-0457

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 143

JOHN ALEXANDER ETHEN REVOCABLE TRUST
AGREEMENT DATED OCTOBER  17, 1996,
JOHN ALEXANDER ETHEN, Trustee, and
JANET RUTH ETHEN REVOCABLE TRUST
AGREEMENT DATED OCTOBER 17, 1996,
JANET RUTH ETHEN, Trustee,

   Plaintiffs, Appellees and Cross-Appellants,

 v.

RIVER RESOURCE OUTFITTERS, LLC,
and CHRISTINE K. FISCHER,

   Defendants and Appellants.

APPEAL FROM:  District Court of the Third Judicial District,
       In and For the County of Granite, Cause No. DV 07-37
       Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

   For Appellant River Resource Outfitters, LLC:

     Mark E. Jones, Attorney at Law, Hall, Montana

   For Appellant Christine K. Fischer:

     Clinton J. Fischer, Attorney at Law, Polson, Montana

For Appellees:

    Jane E. Cowley, Peter S. Dayton, Worden Thane, P.C.,
    Missoula, Montana

Submitted on Briefs:  April 26, 2011

Decided:  June 21, 2011

Filed:

_____
                          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Appellees John and Janet Ethen (Ethens) sought declaratory relief in the Third Judicial District Court, Granite County, to resolve a boundary dispute with Appellants River Resource Outfitters (Joneses) and Christine Fischer (Fischer) (collectively Neighbors). The court declared that the common boundary line between the parties' properties runs in a meander line along the west bank of Flint Creek. We affirm.

¶2 We review the following issues on appeal:

¶3 *Whether the District Court improperly relied upon extrinsic evidence to determine legal title to the disputed property.*

¶4 *Whether the District Court correctly determined that the boundary line between the parties' properties meanders along Flint Creek.*

¶5 *Whether Ethens filed a timely claim for declaratory relief.*

¶6 *Whether the District Court failed to join other landowners on Flint Creek.*

¶7 *Whether Neighbors gained title to the disputed property through adverse possession.*

¶8 *Whether the District Court abused its discretion when it declined to award attorney fees to Ethens.*

## FACTUAL AND PROCEDURAL HISTORY

¶9 Ethens purchased property in Granite County in July 2007. Neighbors own properties that border Ethens' property. James and Mary Mellen (Mellens) originally

3

owned in one common tract Neighbors' and Ethens' properties. Mellens' tract consisted of approximately 125 acres. Flint Creek runs north and south through the property. A county road runs east and west through the property.

¶10 Mellens conveyed approximately 35 acres to Thelma and Warren Cummins, Sr. in 1960 through a deed titled the "Mellen-Cummins Deed." The deed stated that Mellens intended to convey "only all of the lands which they own [w]est of Flint Creek and [s]outh of the present [c]ounty [r]oad." Warren Cummins, Sr. quitclaimed Cummins' parcel to Thelma Cummins Brownell in 1976. The deed excluded a paragraph from the original Mellen-Cummins Deed. The relevant boundary description did not change. Thelma deeded her parcel to Warren Cummins, Jr. (Cummins) in 1996.

¶11 Mary Mellen transferred the remainder of the original 125-acre tract that she and James had retained, approximately 90 acres, to her daughter, Frances E. Lane (Lane), in 1963. Lane created the Lane Ranch in 1977. Flint Creek served as the boundary between Cummins's property (to the west) and the Lane Ranch (to the east). The county road served as Cummins's north boundary with the Lane Ranch.

¶12 Charles Lane commissioned surveyor William Bayer (Bayer) in 1982 to create three parcels from the approximately 90-acre parcel known as the Lane Ranch. Bayer created the first recorded certificate of survey (COS 162) involving any of these properties. Bayer referred to the Mellen-Cummins Deed to prepare the survey. Bayer surveyed the west bank of Flint Creek with a compass and set course points along the

4

bank of the creek. Bayer did not set any pins along Flint Creek. Bayer created three parcels—two to the east of Flint Creek, and one to the north of the county road. The diagram below roughly depicts COS 162.

| Parcel 1 | | |
|---|---|---|
| County Road | | |
| | Flint Creek | Parcel 2 |
| Cummins | | Parcel 3 |

¶13 James and Deanna Lane sold Parcel 2 of COS 162 to Fischer in 1990. Fischer later commissioned plat 45-M in order to subdivide her property. Bayer prepared plat 45-M in accordance with COS 162 and the Mellen-Cummins Deed. Fischer sold approximately ten acres of Parcel 2 along Flint Creek to Joneses. Fischer retained approximately 20 acres south of Joneses' parcel along Flint Creek. Cummins owned the parcel to the west of Flint Creek. Cummins eventually sold his parcel to Ethens in 2007. The following diagram roughly depicts the current configuration of the parcels in relation to Flint Creek.

| County Road | | |
|---|---|---|
| Ethens | Flint Creek | Joneses<br><br>_ _ _ _ _ _ _ _ _ _  Parcel 2<br><br>Fischer |
| | | Parcel 3 |

¶14 Ethens' deed from Cummins describes Ethens' property by incorporating certificate of survey 521 (COS 521). COS 521 constituted a retracement survey of the property originally created in the Mellen-Cummins Deed. Cummins commissioned COS 521 in order to resolve a dispute regarding the south boundary with a different neighbor. COS 521 incorporates most of the same course points along Flint Creek that Bayer had set forth in COS 162.

¶15 The parties dispute ownership over a small strip of land west of Flint Creek. The contested area of land consists of .61 acres along the Joneses/Ethens boundary and 1.04 acres along the Fischer/Ethens boundary. The Mellen-Cummins Deed and the subsequent certificates of survey describe the boundary in dispute. The Mellen-Cummins Deed describes the boundary between Ethens' property and Neighbors' properties as

running along the west bank of Flint Creek. The narrative descriptions in COS 162, COS 521, and plat 45-M likewise describe the boundary as running along the west bank of Flint Creek.

¶16 COS 162 set forth fixed course points along the west bank of Flint Creek. Bayer mapped the course points in 1982 along the top of the west bank of Flint Creek. The course points now lie slightly west of the west bank of Flint Creek. A subsequent surveyor's fixing of these course points on the ground has led to the dispute over the acreage just west of Flint Creek.

¶17 Ethens claim that Flint Creek constitutes the property boundary between their property and Neighbors' properties. They argue that Bayer's course points in COS 162 created a meandering boundary line along Flint Creek. Ethens rely on the original Mellen-Cummins Deed and the succeeding certificates of survey to support their argument that a meandering boundary along Flint Creek provides landowners on both sides of the creek access to its waters.

¶18 Cummins advertised the parcel that he sold to Ethens as creek front property. Ethens became aware of the fact that Neighbors disputed the boundary while they negotiated the purchase of the property from Cummins. Ethens decided to purchase the property based on their research and subsequent belief that Cummins's parcel bordered Flint Creek. Ethens negotiated a reduced purchase price for the property in light of the potential boundary dispute with Neighbors.

¶19 Neighbors commissioned a new survey of their properties shortly after Ethens purchased the property from Cummins. Certificate of survey 788 (COS 788) placed fixed pins on the ground along the west bank of Flint Creek according to the course points in Bayer's 1982 survey. COS 788 depicts a boundary line that used a straight line to connect the pins, unlike the previous surveys that had drawn the boundary along Flint Creek. The boundary line in COS 788 lies just to the west of Flint Creek. This property boundary excludes Ethens' access to Flint Creek. Ethens sought declaratory relief to resolve the dispute.

¶20 The District Court held a bench trial. The court declined Neighbors' summary judgment motion that had sought to join to the action other landowners with a property interest in parcel 3. Ty Throop (Throop) purchased parcel 3 of COS 162 from Lanes over twenty years ago. Throop owned parcel 3 at the time of trial. Throop testified on behalf of Neighbors regarding his interpretation of parcel 3's boundary with Ethens' property.

¶21 The court agreed with Ethens that the Mellen-Cummins Deed and the subsequent certificates of survey, COS 162, COS 521, and plat 45-M, described a meandering boundary line along the west bank of Flint Creek. The parties agreed that Flint Creek qualifies as a non-navigable stream. The court declared, therefore, that Ethens' property line extended to the center of Flint Creek. The court also declared that COS 788 constituted an invalid survey and ordered it stricken from the public record.

8

¶22 The court rejected Neighbors' alternative claim that they had acquired property west of Flint Creek through adverse possession. The court likewise rejected Neighbors' claims that Ethens had acquiesced to a fixed boundary line west of Flint Creek, that the doctrines of laches and equitable estoppel barred Ethens' claim, and that Ethens had failed to join an indispensible party. The court declined to award Ethens' request for attorney fees. Neighbors appeal and Ethens cross-appeal on the issue of attorney fees.

## STANDARD OF REVIEW

¶23 This Court reviews findings of facts to determine whether substantial credible evidence supports the district court's findings. *Mont. Rail Link v. CUSA PRTS., LLC*, 2009 MT 432, ¶ 26, 354 Mont. 101, 222 P.3d 1021. We must review the evidence in the light most favorable to the plaintiff. *Id.* We review for correctness a district court's conclusions of law. *Id.* We review for an abuse of discretion a district court's decision to award attorney fees under § 27-8-313, MCA. *Renville v. Farmers Ins. Exch.*, 2004 MT 366, ¶ 20, 324 Mont. 509, 105 P.3d 280.

## DISCUSSION

¶24 *Whether the District Court improperly relied upon extrinsic evidence to determine legal title to the disputed property.*

¶25 The court must interpret the plain language of an unambiguous deed. *Tester v. Tester*, 2000 MT 130, ¶ 25, 300 Mont. 5, 3 P.3d 109. The court cannot resort to extrinsic evidence of the grantor's intent to interpret an unambiguous deed. *Id.* The Mellen-Cummins Deed appears in Ethens' chain of title. Neighbors nevertheless argue that

9

Ethens' deed from Cummins provides an unambiguous property description, and, therefore, the court improperly considered extrinsic evidence in the form of the Mellen-Cummins Deed.

¶26 *Tester* dealt with a boundary dispute similar to the dispute here. The Court in *Tester* looked first to the parties' chains of title. *Id.* at ¶ 15. The district court had interpreted one of the deeds in the chain of title contrary to the plain language of that deed. *Id.* at ¶ 27. The deed unambiguously set forth the disputed boundary. *Id.* at ¶ 28. The district court should have limited its analysis to the deed's unambiguous language. The district court instead improperly considered extrinsic evidence of the grantor's intent to locate the boundary that was not included in the language of the deed. *Id.*

¶27 Ethens' deed from Cummins describes the property as set forth "in certificate of survey 521." A certificate of survey becomes part of the deed when a deed grants land according to an official survey. *Olson v. Jude,* 2003 MT 186, ¶ 46, 316 Mont. 438, 73 P.3d 809. COS 521 does not constitute extrinsic evidence of the grantor's intent. *Tester,* ¶ 27. COS 521 constitutes an essential part of Ethens' deed from Cummins. *Olson,* ¶ 46. The District Court properly examined COS 521. *Id.*

¶28 The parties dispute the meaning of the metes and bounds description in COS 521. COS 521 constituted a retracement survey of Ethens' parcel that originally had been created in the Mellen-Cummins Deed. Cummins commissioned COS 521 in order to resolve a dispute regarding the parcel's southern boundary. COS 521 states on its face

10

that the survey serves "to clarify omissions in previous deed transfers for this parcel of land."

¶29    The surveyor who created COS 521 testified that he had relied on the Mellen-Cummins Deed.  In fact all of the surveyors who testified referred to the Mellen-Cummins Deed.  Neighbors never objected to any reference to the Mellen-Cummins Deed by the surveyors.  The parties also stipulated on the first day of trial that the court should admit any documents that described the parties' chains of title.  The court admitted the parties' chains of title.  Ethens' chain of title includes the Mellen-Cummins Deed.

¶30    Neighbors inconsistently argued their position regarding the Mellen-Cummins Deed.  Neighbors presented the District Court with the Mellen-Cummins Deed in their first motion for summary judgment on October 22, 2008.  Neighbors initially argued that the Mellen-Cummins Deed provided critical evidence relevant to the boundary dispute.  They argued in their first summary judgment brief that the Mellen-Cummins Deed unambiguously excluded Ethens' access to Flint Creek.  Neighbors changed course, however, by the time that they had filed their second summary judgment brief on November 25, 2008.  They argued instead in their second summary judgment brief that the Mellen-Cummins Deed constituted extrinsic evidence.  Neighbors failed to explain their change in position.

¶31    The District Court allowed the Mellen-Cummins Deed into evidence.  The Mellen-Cummins Deed, prepared before Ethens' deed from Cummins, provides the first

11

description of the disputed boundary. Ethens' chain of title includes the Mellen-Cummins Deed. *Tester,* ¶ 15. The information contained in the Mellen-Cummins Deed cannot be considered extrinsic evidence under these circumstances. *Id.* at ¶ 27. The District Court simply interpreted the plain language of the Mellen-Cummins Deed, the subsequent certificates of survey, and Ethens' deed from Cummins. The court properly examined the chains of title to the parties' properties in seeking to define the boundary. *Id.* at ¶ 15.

¶32 *Whether the District Court correctly determined that the boundary line between the parties' properties meanders along Flint Creek.*

¶33 Neighbors argue that the District Court incorrectly found that the evidence described the parties' boundary as a meander line along the west bank of Flint Creek instead of a fixed boundary just west of Flint Creek. The court relied on certificates of survey that describe the boundary, the properties' chains of title, lay testimony, and expert testimony from several Montana land surveyors. The court sorted through sometimes contradictory evidence to determine whether the disputed boundary constituted a meander line or a fixed and definite boundary line.

¶34 This Court discussed the definition and purpose of meander lines in *Andersen v. Monforton,* 2005 MT 310, ¶¶ 17-30, 329 Mont. 460, 125 P.3d 614. A surveyor uses a meander line to show that a body of water serves as the boundary. *Id.* at ¶ 19. A meander line sets specific measurements on a survey to define the quantity of land for purchase. Meander lines define a boundary as moving with a body of water's shifting

bank, even though meander lines contain specific measurements. *Id.* at ¶ 20. A boundary along a body of water runs to the edge of the body of water. A boundary along a body of water generally does not become definite and fixed unless the grantor explicitly indicates such intent. *Id.* at ¶ 21; § 70-16-201, MCA.

¶35 The Mellen-Cummins Deed describes the boundary between Ethens' property and Neighbors' properties as the west bank of Flint Creek. The Mellen-Cummins Deed explicitly states its intention "to convey and warrant conveyance only all of the lands which [the Mellens] own [w]est of Flint Creek." The Mellen-Cummins Deed did not reserve a portion of land west of the west bank of Flint Creek. *Andersen,* ¶ 21. The Mellen-Cummins Deed did not set forth any fixed points west of the west bank of Flint Creek. The plain language of the Mellen-Cummins Deed supports the court's finding. *Mont. Rail Link,* ¶ 26. Nothing in the Mellen-Cummins Deed indicates an intent to create a fixed boundary west of the west bank of Flint Creek. Section 70-16-201, MCA.

¶36 COS 162 constitutes the first recorded survey of the disputed properties. COS 162's narrative describes the boundary between the parties' properties as running along the west bank of Flint Creek. Bayer prepared COS 162 according to the Mellen-Cummins Deed. Bayer surveyed Flint Creek with a compass and set course points along the west bank of the creek. Bayer set the course points in order to calculate acreage for Lane's parcels.

¶37 Bayer had intended to create a fixed boundary line along the top of the west bank of Flint Creek. He did not believe, however, that the Mellen-Cummins Deed granted

13

Cummins access to Flint Creek. Bayer admitted on cross-examination that the call to the west bank of Flint Creek in the Mellen-Cummins Deed constituted a bound call. Bound calls, according to Bayer, supersede survey data. Montana law confirms Bayer's testimony. *See Bollinger v. Hollingsworth*, 227 Mont. 454, 457, 739 P.2d 962, 964 (1987) (citing *Buckley v. Laird*, 158 Mont. 483, 492, 493 P.2d 1070, 1075 (1972)). The bound call to Flint Creek in COS 162 therefore would override any set course points, including the course points that Bayer himself had set. *Id.* Bayer also agreed that the boundary did not create a straight line, but fluctuated along the west bank of Flint Creek.

¶38 Another Montana surveyor, Barney Hallin (Hallin), testified that the boundary set forth on COS 162 constituted a meandering boundary line along Flint Creek. Hallin interpreted COS 162 in light of the Mellen-Cummins Deed. He also relied on the narrative included in COS 162 that describes the boundary as running along the west bank of Flint Creek. Hallin testified that COS 521 likewise set forth a meandering boundary line.

¶39 Cummins commissioned COS 521 to resolve a boundary dispute with his neighbor to the south. The narrative in COS 521 describes Ethens' eastern boundary as "along the west bank of Flint Creek." Hans Bohrnsen (Bohrnsen) prepared COS 521. Bohrnsen incorporated Bayer's course points along the west bank of Flint Creek. Bohrnsen testified, similar to Bayer, that a survey does not require fixed pins if the deed calls to a natural monument creating the boundary. Flint Creek constitutes a natural monument creating the boundary between the parties' properties. Bohrnsen testified that COS 521

14

does not set a fixed boundary line. COS 521 set forth a meandering boundary line that fluctuates with the course of Flint Creek.

¶40 Tom Moodry, another Montana surveyor, testified for Neighbors that the disputed boundary lies to the west of the west bank of Flint Creek. Moodry based his testimony on a different interpretation of the same certificates of survey and the Mellen-Cummins Deed. He believed that the grantor of the Mellen-Cummins Deed had not intended to convey access to the waters of Flint Creek. He reached this conclusion despite the language in the Mellen-Cummins Deed that the boundary ran "along the west bank of Flint Creek." Moodry interpreted the phrase "along the west bank of Flint Creek" to mean "close to, nearby, parallel to, but away from the running water" of Flint Creek.

¶41 The surveyors presented contradictory testimony. The district court determines the credibility of the witnesses and the weight assigned to their respective testimony. *Kulstad v. Maniaci*, 2009 MT 326, ¶ 52, 352 Mont. 513, 220 P.3d 595. The District Court agreed with Hallin and Bohrnsen that the evidence established a meandering boundary along Flint Creek. Bayer did not characterize the boundary line that he had created in COS 162 as a meandering boundary. Bayer testified, however, that he had intended the boundary to run along Flint Creek. Bayer set fixed course points for the purpose of determining acreage. This Court similarly identified a meandering boundary line in *Andersen* as one that runs along the edge of a creek and serves to quantify acreage. *Andersen*, ¶ 20.

15

¶42 Neighbors also argue that the absence of the term "meander line" from the relevant deeds and certificates of survey supports the existence of a fixed boundary line. A deed need not specifically characterize the boundary line as a meander line, however, when the narrative description of the land grant clearly indicates that the boundary meanders along a watercourse. *Andersen*, ¶ 21. The narrative descriptions in COS 162, COS 521, and plat 45-M all describe the boundary as running along Flint Creek. *Id.* The surveys also portray a boundary line that runs along Flint Creek.

¶43 The District Court based its finding that COS 162, COS 521, and plat 45-M set forth a meandering boundary line along Flint Creek on the exhibits and testimony. Hallin's testimony and Bohrnsen's testimony support the District Court's finding. *Id*. Other substantial credible evidence in the record, including the Mellen-Cummins Deed, further supports the court's findings. *Mont. Rail Link*, ¶ 26. The court properly characterized the disputed boundary as a meandering line along Flint Creek. *Id.*

¶44 *Whether Ethens filed a timely claim for declaratory relief.*

¶45 Neighbors make a series of related arguments that Ethens failed to file a timely claim for relief. They argue either that the statute of limitations had run on Ethens' claim or that the doctrines of laches, equitable estoppel or acquiescence bar Ethens' claim. Neighbors base these arguments on the premise that Ethens or their predecessors in interest knew that COS 162 and COS 521 set forth a fixed boundary line and did nothing until Neighbors filed COS 788.

¶46    Neighbors commissioned COS 788 after Ethens had purchased their property. Earlier surveys had reflected a meandering boundary line along Flint Creek. COS 788, unlike the previous surveys, placed fixed pins on the ground according to Bayer's course points from COS 162. The surveyor drew straight lines in order to connect the newly placed pins. COS 788 set forth for the first time a fixed boundary line west of Flint Creek. The pins locate the boundary approximately 20 to 100 feet west of Flint Creek. The fixed boundary in COS 788 runs through the middle of an old building on Ethens' property. Ethens had no involvement in the preparation or recordation of COS 788.

¶47    Neighbors filed COS 788 on November 27, 2007. Ethens filed their claim for declaratory relief in response to COS 788 three weeks later on December 19, 2007. Neighbors fail to cite a relevant statute of limitation. Ethens filed their claim less than a month after Neighbors had filed COS 788. The equitable doctrine of laches likewise does not bar Ethens' claim disputing the fixed boundary set forth in COS 788. The relative alacrity exercised by Ethens cannot qualify as sitting on their rights. *Montanans for Just. v. State*, 2006 MT 277, ¶ 25, 334 Mont. 237, 146 P.3d 759. The record does not support Neighbors' claim that Ethens had acquiesced to a fixed boundary. The doctrine of equitable estoppel likewise does not bar Ethens' claim.

¶48    *Whether the District Court failed to join other landowners on Flint Creek.*

¶49    Section 27-8-301, MCA, provides that the court must join any person who has an interest that a declaratory judgment would affect. M. R. Civ. P. 19(a)(1) requires a district court to join a party to an action if complete relief cannot occur in the party's

absence. Complete relief relates to persons already parties, rather than to relief between a party and the absent person. *Mt. West Bank v. Mine & Mill Hydraulics, Inc.*, 2003 MT 35, ¶ 32, 314 Mont. 248, 64 P.3d 1048. The facts and circumstances of each case determine whether a court must join a particular non-party. *Id*. We will reverse for an abuse of discretion the district court's decision whether to join a party. *Mohl v. Johnson*, 275 Mont. 167, 169-70, 911 P.2d 217, 219 (1996).

¶50    The bank in *Mt. West Bank* brought a foreclosure action against Mine & Mill Hydraulics (Mine & Mill) after Mine & Mill had defaulted on several of its loan obligations. *Mt. West Bank*, ¶ 34. The action involved multiple parties all whom had some type of interest in the disputed property. *Id.* The district court denied the defendant's request to join Mountain Hydraulics. *Id.* The former directors of Mine & Mill had created Montana Hydraulics after Mine & Mill had failed. Montana Hydraulics held no legal interest in the disputed property. *Id.* Montana Hydraulics did not qualify as an indispensable party. *Id.*

¶51    The District Court determined that it could grant meaningful relief without joining other landowners along Flint Creek. The boundary at issue lies between Ethens' property and Neighbors' properties. The parties dispute ownership over a strip of acreage west of Flint Creek as described in COS 788.

¶52    Other neighboring landowners hold no legal interest in the disputed acreage at issue in this case. *Mt. West Bank*, ¶ 34. In fact, the owner of parcel 3 testified at trial. The owner of parcel 3 had notice of Ethens' declaratory relief action and elected not to

intervene. Other landowners may, including the owner of parcel 3, have an interest in the court's interpretation of the relevant surveys. The only boundary in dispute in this action, however, lies between Ethens' property and Neighbors' properties. This decision does not determine the rights of any other landowners along Flint Creek. Section 27-8-301, MCA. We cannot say that the District Court abused its discretion in declining Neighbors' efforts to join other landowners under these circumstances. *Mt. West Bank,* ¶ 32.

¶53 *Whether Neighbors gained title to the disputed property through adverse possession.*

¶54 Neighbors must prove through clear and convincing evidence that their possession qualified as "open, notorious, exclusive, adverse, continuous, and uninterrupted" in order to establish ownership through adverse possession. *Meadow Lake Estates Homeowners Assn. v. Shoemaker*, 2008 MT 41, ¶¶ 36-37, 341 Mont. 345, 178 P.3d 81. Neighbors presented evidence of their properties' tax assessments. Neighbors had paid taxes on the disputed acreage and claimed that they exclusively had used property to the west of Flint Creek.

¶55 Neighbors maintain that they have used the disputed property west of Flint Creek for recreation and had chosen to leave the land undisturbed. Ethens presented similar testimony. The court found that both parties in fact had used the disputed property to access Flint Creek. Neighbors failed to provide the Court with clear and convincing

evidence that their use of the disputed property west of the west bank of Flint Creek qualified as exclusive. *Shoemaker*, ¶ 36.

¶56 *Whether the District Court abused its discretion when it declined to award attorney fees to Ethens.*

¶57 The district court may award attorney fees at its discretion under § 27-8-313, MCA, when equitable considerations support the award. *United Natl. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 269, ¶ 38, 352 Mont. 105, 214 P.3d 1260. The District Court identified no equitable considerations that would support an award of attorney fees to Ethens. Both parties genuinely believed that they owned the disputed property. Ethens had negotiated a $130,000 reduced purchase price for their property in light of potential attorney fees that could result from litigation to resolve the boundary dispute. The District Court did not abuse its discretion under these circumstances when it declined to award attorney fees to Ethens. *Id.* at ¶ 38.

¶58 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE